UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES, ex rel. ) | |
| JENNIFER BARRETT, QUANA ) | |
| BURPO, VICKY CLEMMONS, ) | |
| RANDI CREIGHTON, NADIA ) | |
| IVORY, VICKIE McNEELY and ) | |
| JOY URIBE, on behalf of THE ) | |
| UNITED STATES OF AMERICA, ) | CASE NO. 2:13-CV-1989-SLB |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | |
| ) | |
| BEAUTY BASICS, INC., ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This case is before the court on defendant's Motion to Dismiss. (Doc. 8.)[1] Upon consideration of the motion, the supporting and opposing memoranda, arguments of counsel and the relevant law, the court finds, for the reasons stated below, that defendant's Motion is due to be granted, and the Complaint is due to be dismissed with leave for plaintiffs (hereafter "plaintiffs" or "relators") to file an Amended Complaint.[2]

---

[1] Reference to a document number, ("Doc. ___"), references to the number assigned each document as it is filed in the court's record.

[2] The Motion to Dismiss requests that the court dismiss the Complaint with prejudice, but defendant has not shown why this case is the exceptional one in which relators should not be allowed an opportunity to amend their complaint before dismissal. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); FED. R. CIV. P. 15(a).

## STANDARD OF REVIEW

A complaint is required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When a plaintiff alleges fraud or mistake, the complaint must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and footnote omitted). The plaintiff need not prove his case, but must plead "enough facts to state a claim to relief that is *plausible* on its face." *Id.* at 570 (emphasis added).

Additionally, "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir.

1993)). Further, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, "'[u]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.'" *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). Therefore, though the court must accept all factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

## **FACTUAL BACKGROUND**[3]

To pursue a career in esthiology, relators obtained federal financial aid and enrolled in the Aveda Institute at Birmingham (hereinafter "Aveda"), owned and operated by defendant. (Doc. 1 ¶ 10-11; doc. 9 at 5 n.1.) Although esthiology is left undefined by relators' Complaint, its study apparently involves "skin care training with an emphasis on using pure flower and plant essences in treatments." AVEDA INSTITUTE, http://aveda.edu/institute/aveda-institute-birmingham (last visited February 10, 2015).[4] Between late 2012 and summer of 2013, relators were not provided grades or "properly licensed instructors," both of which, relators allege, are required by Aveda's accrediting institution, the National Accrediting Commission of Career Arts and Sciences ("NACCAS").

---

[3]As noted above, for purposes of deciding the Motion to Dismiss, the court accepts as true all facts alleged in the Complaint.

[4]The court's research did not reveal significant use of the term outside of Aveda-sponsored websites. The term is most likely a trade name.

(Doc. 1 at ¶¶ 12-15.) "During this time period, [d]efendant falsely certified in written reports to NACCAS that it was in [c]ompliance with NACCAS's standard," and "with full knowledge that [defendant] did not meet the requirements for accreditation under NACCAS standards, [defendant] then represented to the United States Department of Education that it met the NACCAS standards" by certifying that it met those standards in "Program Participation Agreements" ("PPAs"). (*Id*. at ¶¶ 16,17.)  Had defendant not engaged in this "two[-]part fraud," relators allege, defendant would not have received funds from the Title IV, Higher Education Act program. (*Id*. at ¶¶ 17, 19.) Relators allege that these facts amount to "a false and fraudulent claim against the United States." (*Id*. at ¶ 21.) Although they fail to actually invoke the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., in Count I,[5] that is the Act that they assert gives this court jurisdiction to hear their claim. (*See id.* at ¶¶ 9, 21.)

## ANALYSIS

Defendant attacks relators' two-step theory of liability and the sparse factual allegations with which they present it. It argues that falling behind on accreditation requirements in 2013 and failing to notify the accrediting agency does not make its 2009 PPA fraudulent, nor does it make any certification to the United States that it was in fact accredited—which nobody disputes, (doc. 1 ¶ 12)—fraudulent. (Doc. 9 at 13-14.) The theory,

---

[5]Relators concede that Count II, titled "Reimbursement," does not state a cause of action and that it should be dismissed.

defendant argues, depends upon the incorrect assumption that "accreditation is immediately revoked upon" defendant's alleged infractions. (Doc. 9 at 15.)

The Complaint does not mention a 2009 PPA, but merely references "the PPAs" that defendant made "periodically." (Doc. 1 ¶ 17.) The Complaint alleges that "during this time period"—that is, "beginning in approximately December of 2012 through July 2013"—"defendant falsely certified in written reports to NACCAS that it was in [c]ompliance with NACCAS's standard." (Doc. 1 ¶ 15-16.) The Complaint alleges in the next paragraph that defendant, "with full knowledge that it did not meet the requirements for accreditation under NACCAS standards, *then* represented to the United States Department of Education that it met the NACCAS standards." (*Id.* ¶ 17) (emphasis added). It did this, the Complaint alleges, through PPAs "made periodically" with the United States in which defendant would certify "that it meets the NACCAS standards." (*Id.*) Defendant's assertion that "[i]n fact, NACCAS accreditation is the only certification in the PPA regarding NACCAS," and that the "PPA does not mention or certify meeting NACCAS standards," (doc. 9 at 17 n.23), does not help it on a motion to dismiss. Defendant must attack the Complaint as-is, and contrary to defendant's argument, the Complaint plainly alleges a false certification.[6] (*See* doc. 9 at 16.)

---

[6]This understanding of the certifications at issue comes from a close but natural reading of the Complaint. Clearly, representing that one is accredited is different than representing that one is meeting accreditation standards. Given that particularity is required in this pleading, that difference is significant to whether or not the "factual contentions [in the pleading] have evidentiary support." Fed R. Civ. P. 11(b)(3). Any amended complaint

Defendant next argues that the Complaint fails Rule 9(b)'s requirement that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." To comply with Rule 9(b), a complaint must allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (citation omitted).

The second requirement is the problem for relators. The Complaint does not allege a specific date on which any one certification was made, nor any "person responsible for making" any certification, *see Clausen*, 290 F.3d at 1310, but rather makes the blanket declaration that "every certification submitted by [d]efendant to the United States Department of Education" between December 2012[7] and October 2013 "was false and fraudulent." This statement does not provide two types of information that the Eleventh Circuit has recognized as important: "actual dates" and "amounts of charges." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1312 & n.21 (11th Cir. 2002). Timing is especially important here because it may change the question of FCA liability from whether

---

should not say one and mean the other.

[7]Given the significance of December 2012 in the Complaint, the reference to December 2011 in paragraph twenty-two is presumably a typographical error. (*See* doc. 1 ¶¶ 15, 22; doc. 1-1 at 1.)

defendant falsely certified to the United States that it was in compliance with NACCAS standards in order to receive federal funds, which seems to be a plain instance of an FCA violation, to whether receiving federal funds during a lapse of perfect compliance with NACCAS standards constitutes an FCA violation, which is not so straightforward, *see McNutt ex rel. United States v. Haleyville Medical Supplies*, 423 F.3d 1256 (11th Cir. 2005) ("When a violator of government regulations is *ineligible* to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the [FCA], for its submission of those false claims[.]") (emphasis added); *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1176 (9th Cir. 2006) ("The statute, regulation, and agreement here all explicitly condition participation and payment on compliance with, among other things, the precise requirement that relators allege that the University *knowingly disregarded*.") (emphasis added); *id.* at 1177 ("The fact that defendants [in *Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001),] did not meet the appropriate standard of care does not necessarily mean

that they were ignoring their duty to try their best to comply . . . .").[8] Timing will also affect the argument on whether scienter can be inferred. (*See* doc. 9 at 19-20.)

The more difficult problem, however, comes out in relators' Opposition to Defendant Beauty Basics, Inc.'s Motion to Dismiss. (Doc. 13.) Latching onto defendant's admission "that it did file a PPA on March 5, 2009," relators craft an entirely different presentation of how the defendant violated the FCA: by "not notify[ing] the government of its violations of the accreditation standards after the filing of said PPA" all the while "receiv[ing] federal loans made under Title IV." (Doc. 13 at 8.) It would be one thing if this were merely an additional allegation (which could only be included by amending the complaint), but apparently, this has been the true meaning of the words in the Complaint all along. (*See* doc. 13 at 13 ("The Complaint states that [d]efendant received funds from the government while it knew that it was not in compliance [with NACCAS accreditation standards].").) If relators had any confidence in their original allegations, the court expects they would have simply

---

[8]Relators may think that asking for details as specific as "actual dates" and "amounts of claims" is too demanding. After all, how are students supposed to know the inner workings of their school's billing transactions? Well, that may be why

> [m]ost relators in qui tam actions are insiders. As a corporate outsider, [relators] may have . . . to work hard to learn the details . . . while not being privy to [the defendant's] . . . files and computer systems. But, while an insider might have an easier time obtaining information about billing practices and meeting the pleading requirements under the False Claims Act, neither the Federal Rules nor the Act offer any special leniency under these particular circumstances to justify [relators] failing to allege with the required specificity the circumstances of the fraudulent conduct [they] assert[] in [this] action.

*Clausen*, 290 F.3d at 1314.

repeated them: that "[d]efendant, despite being in clear violation of the standards and policies of NACCAS, certified to the United States government that it met the standards and policies set by NACCAS and did so with the intent of receiving federal funds." (Doc. 1 ¶ 18.) But relators must know that such clarity is unsustainably misleading because they abandon that language in favor of this: "Defendant received federal aid and payments from the government during the time period that it knew it was not in compliance with NACCAS standards. These submissions were implicit reaffirmations of compliance despite being non-compliant." (Doc. 13 at 8.)

> Explaining Rule 9(b)'s purpose, the Eleventh Circuit noted:
>
> When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them [sic] to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' [sic] goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements.

*Clausen*, 290 F.3d at 1313 n.24. Here, relators got one "bare essential[]," a date of a PPA, in a motion to dismiss, one step earlier than discovery. (*See* doc. 13 at 8.) However, relators cannot proceed to discovery without first preparing the sort of detail-rich complaint required by Rule 9(b) as interpreted by the Eleventh Circuit in *Clausen*.

## **CONCLUSION**

Because the Complaint does not comply with Rule 9(b)'s particularity requirement, defendant's Motion to Dismiss, (doc. 8), is due to be granted and the Complaint is due to be dismissed with leave for plaintiffs to file an Amended Complaint. An order in accordance

9

will be entered contemporaneously with this Memorandum Opinion. If an Amended Complaint is not filed within the time specified in the accompanying order, this case will be dismissed without prejudice.

**DONE** this 11th day of February, 2015.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE